## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHRISTOPHER STEADMAN,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-801
Beckwith, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in

opposition (Doc. 10), and plaintiff's reply memorandum. (Doc. 13).

### I. Procedural Background

Plaintiff filed applications for DIB and SSI in April 2007, alleging disability since

December 13, 2003, due to chronic cysts, abdominal hernia and bipolar disorder. Plaintiff's

applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested

and was granted a de novo hearing before ALJ Larry Temin. Plaintiff and a vocational expert

(VE) appeared and testified at the ALJ hearing. On August 21, 2009, the ALJ issued a decision

denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## II. Medical Evidence[1]

### A. Physical Impairments

Plaintiff presented to the emergency room at Mercy Franciscan Western Hills (Mercy Franciscan) several times in 2003. He complained of a headache in April 2003 (Tr. 281-83); a sore throat in June 2003 (Tr. 278-80); sinus congestion in October 2003 (Tr. 275-77); and a migraine headache in November 2003. (Tr. 272-74). During these hospital visits he was given medication and discharged. *Id.*

In January 2004, plaintiff was seen in the emergency room for a sore throat. (Tr. 269-71).

Plaintiff presented to the emergency room numerous times throughout the period documented by the record due to pain, swelling, infections, and drainage of recurrent abscesses:

- November 11, 2004, Mercy Franciscan - examination revealed some tenderness and swelling, but no abscess. Plaintiff was given medication. (Tr. 265-68).

- November 12, 2004, Good Samaritan Hospital (GSH) - plaintiff did not take the antibiotics he was prescribed the previous day and the abscess was drained. (Tr. 445-46).

- December 27, 2004, Mercy Franciscan - complaints of a boil on his back; he was told to use warm compresses and follow up with his primary care physician as he had been given medication on November 26, 2004. (Tr. 261-64).

- December 29, 2004, GSH - left arm abscess; he was given medication. (Tr. 441-44).

- December 31, 2004, GSH - left arm abscess drained. (Tr. 438-39).

---

[1]Plaintiff has submitted additional medical evidence in conjunction with his Statement of Errors that was never before the ALJ. *See* Docs. 9 and 14. The Court may not consider this evidence in its substantial evidence review as the Court is limited to reviewing the record evidence before the ALJ. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). Also, plaintiff has not sought a remand based on new and material evidence under Sentence Six of 42 U.S.C. § 405(g). The Court declines to *sua sponte* consider whether a remand on this basis is warranted.

- January 2, 2005, GSH - left arm abscess; surgical packing from December 31, 2004 was removed. (Tr. 440).

- October 27, 2005, Mercy Franciscan - plaintiff had a draining abscess near his groin; the abscess area was cleaned and plaintiff received medication. (Tr. 256-60).

- December 26, 2005, Mercy Franciscan - plaintiff complained of an abscess on his buttocks; he received medication. The emergency room staff felt that the abscess was not amenable to incision and drainage at that time. (Tr. 250-54).

- July 7, 2006, Mercy Franciscan - two abscesses on thigh and buttocks were drained. (Tr. 245-51).

- February 20, 2007, GSH- right armpit abscess; given mediation. (Tr. 433-37).

- February 21, 2007, Mercy Franciscan - right armpit abscess was incised. (Tr. 235-42).

- December 22, 2007, Mercy Franciscan - left armpit abscess; he was given medication. (Tr. 352-53).

- December 26, 2007, GSH - left arm abscess was drained. (Tr. 424-31).

- May 16, 2009, Mercy Franciscan - abscess in his left armpit was drained. (Tr. 463-65).

Plaintiff treated with internist, Jose Martinez, M.D., from October 2003 to November 2005. (Tr. 221-32). Plaintiff primarily complained of headaches and anxiety. *Id.* Dr. Martinez prescribed Valium and Fioricent, a headache medication. (Tr. 221-22).

The record was reviewed by state agency physician, Diane Manos, M.D., in June 2007. Dr. Manos concluded that plaintiff did not have a severe physical impairment. (Tr. 346). State agency physician, Willa Caldwell, M.D., affirmed Dr. Manos' assessment in August 2007. (Tr. 345).

The record shows that plaintiff treated with pain specialist Mitchell Simons, M.D., of Greater Cincinnati Pain Management from July 2, 2008 to July 20, 2009. (Tr. 379-84, 390-417,

454-59, 469-74, 487-88). Initially, Dr. Simons diagnosed low back vertebral slippage; low back facet joint disease; and a protruding disc at one level.[1] (Tr. 381). In numerous treatment notes, Dr. Simons reported plaintiff suffered from severe low back and leg pain, poor walking ability and poor ability to complete activities of daily living. (Tr. 391, 393, 400, 407, 457, 458, 473). At times, plaintiff reported 80% - 90% pain relief with medication. (Tr. 405-10, 458-59). In January 2009, plaintiff stated that he had almost complete pain relief with medication. (Tr. 393). Dr. Simons diagnosed the plaintiff with lumbar spondylolisthesis[2], lumbar facet arthropathy, bipolar disorder, depression and L5-S1 protruding disc. (Tr. 380, 381, 391, 457, 472, 475). Dr. Simons treated plaintiff with thermal radio frequencies and lumbar epidural injections. (Tr. 355-78, 383-84, 397-98, 402-03, 455-56, 470, 487-88).

On October 10, 2008, Dr. Simons completed a "Basic Medical" form for Job & Family Services. Dr. Simons listed plaintiff's diagnoses as low back arthritis and facet joint disease, but he refused to identify any specific functional limitations, stating that his office did not provide functional capacity evaluations. (Tr. 475-76). Dr. Simons opined that plaintiff was "unemployable" and had been unable to work for the last ten years. *Id.*

## B. Mental Impairments

Plaintiff began treatment at Core Behavioral Health Center ("Core") in February 2007. (Tr. 286). He complained of increasing anxiety and panic attacks and problems with cysts in his armpits and knee. (Tr. 287, 297). The counselor, Shannon Crosswhite, diagnosed plaintiff with bipolar disorder, severe without psychotic features, and anxiety disorder NOS; she

---

[1]Dr. Simons based his diagnosis on an MRI which is not contained in the record. (*See* Tr. 356).

[2]Spondylolisthesis is defined as forward translation of a vertebral body with respect to the vertebra below. *See* http://emedicine.medscape.com/article/95556-overview (last visited on Nov. 7, 2011).

assigned him a Global Assessment of Functioning (GAF) score of 50[3]. (Tr. 286-91). Therapy records at Core show plaintiff complained of poor concentration, thoughts of suicide, mood swings, depressive episodes, anxiety attacks, headaches, racing thoughts, no friends, and no contact with his family members. (Tr. 286-88, 306, 310, 313, 419, 449, 485).

Plaintiff treated with psychiatrist Mark J. Barbara, M.D., at Core from April through July 2007. Dr. Barbara initially diagnosed plaintiff with a mood disorder, NOS, and assigned plaintiff a GAF score of 40[4]. Medication was prescribed. (Tr. 319). Dr. Barbara noted improvement, altered plaintiff's medication regimen, and indicated that plaintiff deteriorated when his medication was stopped after being jailed for non-payment of child support. (Tr. 308-17).

In June 2007, state agency psychologist Vicki Casterline, Ph.D., reviewed the record and opined that plaintiff had mild restrictions in his activities of daily living and his social functioning. (Tr. 326-44). Dr. Casterline opined that plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to respond appropriately to changes in the work setting. (Tr. 327). Dr. Casterline concluded that plaintiff could relate adequately, follow instructions, and tolerate routine changes, but would have difficulty with frequent changes in job duties. (Tr. 328).

---

[3]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 refers to an individual with "serious symptoms  or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). . . ." *See* DSM-IV at 32.

[4]The DSM-IV categorizes individuals with GAF scores of 31 to 40 as having "some impairment in reality testing, or impairment in speech and communication, or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking, or mood." *See* DSM-IV at 32.

Another state agency reviewing psychologist, Kristin Haskins, Psy.D., affirmed Dr. Casterline's assessment in August 2007. (Tr. 323).

In August 2007, Dr. Barbara wrote that plaintiff was "completely incapable of work of any type, in his present state." (Tr. 348). He added that Core Behavioral provided treatment only and did not provide disability determinations. He suggested that if "more information is needed . . . a full, independent and complete determination be arranged elsewhere." *Id.*

In September 2008, plaintiff's counselor was leaving Centerpoint Health/Talbert House and plaintiff was transferred to a medication management group. (Tr. 386). Plaintiff reported he "had reached his desired goals and objectives" and felt stable on his medication. (Tr. 386). Plaintiff saw psychiatrist Carlos Cheng, M.D., at Centerpoint Health/Talbert House for medication management. (Tr. 419-22, 449-50, 485-86).

In October 2008, Dr. Cheng completed a "Mental Functional Capacity Assessment" form for Job & Family Services. Dr. Cheng opined that plaintiff was markedly limited in his ability to perform the following activities: perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Dr. Cheng also opined that plaintiff was moderately limited in his ability to perform in the following areas: understand directions and work like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make simple work related decisions; accept

6

instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation. Dr. Cheng concluded that plaintiff was "unemployable" and that the limitations were expected to last between 90 days and 9 months. (Tr. 477).

In July 2009, Dr. Cheng completed a Mental Impairment Questionnaire. Dr. Cheng stated that he saw plaintiff every two months for medication management and every month for group psychotherapy. Plaintiff's diagnoses included bipolar disorder, NOS, and panic disorder. (Tr. 478). His Axis III diagnoses included migraine headaches and osteoarthritis. *Id.* Dr. Cheng reported that plaintiff was medication compliant and that his treatment included supportive psychotherapy. *Id.* His prognosis was "guarded." *Id.* Dr. Cheng opined that plaintiff had no-to-mild limitations in his activities of daily living and moderate limitations in both his social functioning and his ability to maintain concentration, persistence or pace. (Tr. 481-82). He also reported that plaintiff had experienced three episodes of decompensation within a year. (Tr. 481). Dr. Cheng listed diagnoses of bipolar disorder and panic disorder, and a GAF score of 60[5]. (Tr. 478). Dr. Cheng opined that plaintiff's mental abilities and aptitudes to perform unskilled work was seriously limited but not precluded in the following areas: maintain attention for two-hour segments, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, complete a normal workday and workweek, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, and understand and remember detailed instructions. (Tr. 480). Dr. Cheng concluded that plaintiff would be absent from work about four days a month. (Tr. 483).

---

[5]The DSM-IV categorizes individuals with GAF scores of 51-60 as having "moderate" symptoms. *See* DSM-IV at 32.

### III. Analysis

#### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The claimant met the insured status requirements of the Social Security Act through March 31, 2008, but not thereafter.
>
> 2. The claimant has not engaged in substantial gainful activity since December 17, 2003, the alleged onset date (20 C.F.R. 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: lumbar facet arthropathy and spondylolisthesis at L5-S1; bipolar disorder, not otherwise specified; and borderline intellectual functioning (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). Specifically, the claimant can perform the requirements of work activity except as follows: He can lift/carry up to 20 pounds occasionally and 10 pounds frequently, and can stand and/or walk for 6 hours in an eight-hour workday. The claimant can never crawl, climb ladders, ropes or scaffolds, work at unprotected heights, or work around hazardous machinery, and he can only occasionally stoop, kneel, crouch, climb ramps or stairs, or reach above shoulder level. Further, the claimant can understand, remember and carry out no more than short and simple instructions. The claimant's work should be limited to simple, routine, repetitive tasks. His job should not require interaction with the general public or more than occasional interaction with coworkers or

supervisors. His job should not require more than ordinary and routine changes in work settings or duties, or more than simple work-related decisions.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on November 26, 1965 and was 38 years old, which is deemed as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2003 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 17-26).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,*

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred by failing to afford sufficient weight to the opinions of his treating physicians, Dr. Carlos Cheng and Dr. Mitchell Simons, and by finding that his mental impairment was not severe; and (2) the ALJ erred in not finding the plaintiff disabled under Social Security Ruling 96-8p with regard to sustainability of work and thus did not adequately explain his RFC findings.

### 1. The ALJ did not err in assessing the severity of plaintiff's mental impairments.

Plaintiff's first assignment of error states, in part, that the ALJ erred "by finding that the mental impairment was not severe." (Doc. 9 at 8).

The ALJ determined that plaintiff suffers from bipolar disorder, not otherwise specified, and borderline intellectual functioning, both of which the ALJ determined to be severe mental impairments. (Tr. 17-18). Plaintiff has not explained how the ALJ erred in his severity finding and the Court is unable to discern from plaintiff's brief any specific error in this regard. Accordingly, plaintiff's assignment of error regarding the severity of his mental impairments is not well-taken and should be overruled.

### 2. The ALJ erred in weighing the opinions of plaintiff's treating psychiatrist.

Next, plaintiff contends the ALJ erred by giving only "little weight" to the opinions of plaintiff's treating psychiatrist, Dr. Carlos Cheng. In an October 2008 mental functional capacity assessment, Dr. Cheng opined that plaintiff was "unemployable" and was markedly limited in his ability to perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (Tr. 477). In July 2009, Dr. Cheng opined that plaintiff was seriously limited in his ability to maintain attention for two-hour segments; maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; complete a normal workday and workweek; perform at a consistent pace without an

12

unreasonable number and length of rest periods; deal with normal work stress; and understand and remember detailed instructions. (Tr. 480). The VE testified that Dr. Chang's RFC would rule out competitive employment. (Tr. 59).

The ALJ gave "little weight" to both functional capacity assessments of Dr. Cheng. (Tr. 24). The ALJ discounted the October 2008 assessment because the form used by Dr. Cheng did not define the terms "markedly limited" and "moderately limited"; Dr. Cheng's opinion that plaintiff was "unemployable" is a determination reserved to the Commissioner; and Dr. Cheng indicated plaintiff's symptoms were likely to last no more than 9 months. (Tr. 24). The ALJ also gave little weight to Dr. Cheng's July 2009 opinion because Dr. Cheng purportedly "did not support his opinions, and the limitations in the assessment are not supported by medical signs or findings upon examination in the Centerpoint progress notes." (Tr. 24). The ALJ provided no further explanation for his rejection of the treating psychiatrist's opinions.

The ALJ's decision to give little weight to the assessments of the treating psychiatrist is without substantial support in the record. It is well-established that the findings and opinions of treating physicians are generally entitled to substantial weight, and if the opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and uncontradicted by other substantial evidence they are entitled to controlling weight. *See Blakley,* 581 F.3d at 406; *Wilson,* 378 F.3d at 544; *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529-530 (6th Cir. 1997). "[A] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Cole v. Astrue,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakley,* 581 F.3d at 408). When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much

13

weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician's opinion, based on the evidence in the record, and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id.* (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Wilson*, 378 F.3d at 544). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (emphasis in the original and quoting *Rogers*, 486 F.3d at 243).

As an initial matter, the Court acknowledges that an ALJ is not required to accept a physician's conclusion that his patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion that his patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e). *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

Nevertheless, the other justifications given by the ALJ in this case for discounting Dr. Cheng's assessments fail to satisfy the "good reasons" standard set forth by the Sixth Circuit in *Wilson.* First, the ALJ faulted Dr. Cheng's 2008 opinion because the form he completed did not

define the terms "markedly limited" and "moderately limited." (Tr. 24). Yet, the form assessment of the non-examining state agency psychologist upon which the ALJ relied also failed to define these terms and the ALJ inexplicably took no issue with this form. (Tr. 326-327).

Second, while Dr. Cheng's October 2008 assessment indicated plaintiff's limitations would last between 90 days and 9 months as the ALJ noted, the record evidence subsequent to the 2008 assessment clearly shows that plaintiff's limitations continued beyond Dr. Cheng's initial 9-month prediction. In this regard, the ALJ altogether ignored Dr. Cheng's 2009 assessment, completed approximately nine months after the 2008 assessment, which assessed that plaintiff's impairments lasted or were expected to last at least twelve months. (Tr. 483).

Third, the ALJ stated that Dr. Cheng failed to support his 2009 assessment and that Dr. Cheng's limitations were "not supported by medical signs or findings upon examination in the Centerpoint progress notes." (Tr. 24). However, the ALJ failed to point to any evidence whatsoever in the record demonstrating alleged inconsistencies in Dr. Cheng's assessments and the Centerpoint progress notes, leaving the Court without an evidentiary basis to assess the ALJ's finding. Simply stating the assessment is not supported by the medical signs or findings does not necessarily make it so.

Fourth, contrary to the ALJ's factual finding, Dr. Cheng in fact included the objective clinical findings[6] within his report to support his 2009 assessment of plaintiff's limitations. Dr.

---

[6]Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

15

Cheng specifically reported the following objective clinical findings: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbances; difficulty thinking or concentrating; psychomotor agitation or retardation; persistent disturbances of mood or affect; apprehensive expectation; emotional withdrawal or isolation; hyperactivity; motor tension; emotional lability; flight of ideas; manic syndrome; pressures of speech; easy distractibility; autonomic hyperactivity; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. (Tr. 479). Likewise, the Core Behavioral records support Dr. Cheng's findings. (*See, e.g.*, Tr. 286: unkempt appearance, worried facial expression, fragmented and impoverished stream of thought, abnormalities of thought content including blocking and poverty of thought, depressed affect and mood, impaired remote memory; Tr. 290: mask-like facial expression; Tr. 305: unkempt appearance, slowed psychomotor, worried facial expression, fragmented and impoverished stream of thought, abnormalities of thought content including blocking and poverty of thought, depressed affect and mood, impaired remote memory; Tr. 308: disheveled, anxious; Tr. 310: continues with severe headaches and panic attacks, anxious; Tr. 312: positive for panic attacks; Tr. 316: racing thoughts, insufficient improvement on medications; Tr. 318-319: racing and distracting thoughts causing confusion and poor concentration, "hyper" bad thoughts, frequent mood changes, periods of dissociation, temper outbursts, panic attacks, anger, flat affect, slowed psychomotor, poor eye contact, voice slow and deliberate).

Fifth, the ALJ's decision does not reflect an analysis of the regulatory factors in weighing Dr. Cheng's opinions. *See* 20 C.F.R. § 404.1527(d)(2) (providing a number of factors which must be considered if the treating source opinion is not given controlling weight, including the length of the treatment relationship, the nature and the extent of the treatment relationship, the supportability of the opinion, its consistency with the record as a whole, the specialization of the treating source, and other factors). Applying the requisite factors in this case, it appears that Dr. Cheng's assessment should have been afforded great weight and incorporated into plaintiff's RFC assessment. In mental impairment cases such as the instant case, the Social Security regulations recognize the need for longitudinal evidence and that an individual's level of functioning may vary considerably over time. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (D)(2). Since the level of functioning at any specific time may seem relatively adequate or, conversely, rather poor, proper evaluation of plaintiff's mental impairments must take into account variations in levels of functioning in determining the severity of his impairments over time. *Id.* The record here indicates that plaintiff began individual mental health therapy at Core Behavioral in February 2007 consisting of individual psychotherapy with a mental health counselor combined with medication treatment and management by a psychiatrist. The record contains over two years' worth of progress notes from Core Behavioral detailing plaintiff's sessions and his prescription history, and it includes several clinical assessments of plaintiff's mental health. (Tr. 285-97, 298-319, 347-50, 385-89, 418-22, 448-53, 484-86). Based on these counseling sessions and his individual assessments, Dr. Cheng rated plaintiff's mental functioning as markedly or seriously limited in several significant respects. (Tr. 477, 480-81).

17

The only seemingly contrary evidence is from the non-examining state agency psychologist who reviewed the record in June 2007 and who opined that instead of the marked limitations assessed by Dr. Cheng, plaintiff was moderately limited. (Tr. 327). Although the opinion of a state agency consultant "may be entitled to greater weight than a treating source medical opinion if the State agency . . . consultant's opinion is based on a review of a complete case record," Social Security Ruling 96–6p, such is not the case here. The state agency psychologist offered an RFC opinion in July 2007, before the majority of the medical evidence was entered in the record, including the Core treatment records subsequent to July 2007 (Tr. 347-50, 385-89, 418-22, 448-53, 484-86) and the functional assessments of treating psychiatrist Dr. Cheng. (Tr. 328). Therefore, this non-examining opinion was not based on a complete record, and does not provide substantial evidence for rejecting the treating source opinions or for the ALJ's RFC opinion. *See Blakley*, 581 F.3d at 409 ("we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record"). *See also Shelman*, 821 F.2d at 321; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).[7]

While the ALJ stated he gave "little weight" to Dr. Cheng's opinions, the ALJ's decision does not reflect the ALJ's analysis of the regulatory factors so as to enable this Court to meaningfully review the ALJ's conclusion. The Court cannot say that Dr. Cheng's opinions are

---

[7]The Commissioner argues that the Core treatment notes do not support the limitations proposed by Dr. Cheng and "in fact, Plaintiff stopped counseling in September 2008 because he had met all his goals and was stable on medication" (Doc. 10 at 13), citing to the ALJ's notation that plaintiff was "transferred to medication management group after he told Shelly Hoffman, PC, that he had 'reached his desired goals and objectives in counseling' and that he would like to maintain his medications." (Tr. 22). Contrary to the Commissioner's argument, the record actually shows that plaintiff did not stop counseling and an examination of the record shows that plaintiff in fact continued psychotherapy the very next month in October 2008 with Eleanor Swiecki, LISW (Tr. 422), and continued to receive such therapy in conjunction with treatment from Dr. Cheng, his treating psychiatrist. (Tr. 386, 420, 449, 450, 486).

"so patently deficient that the Commissioner could not possibly credit" them and therefore excuse the ALJ's failure in this case. *Wilson*, 378 F.3d at 547. Because the ALJ failed to consider the factors listed in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) in determining the weight to give Dr. Cheng's opinions, the ALJ's rejection of the treating psychiatrist's RFC assessments is not supported by substantial evidence. The ALJ's decision in this respect constitutes legal error warranting a reversal and remand of this case for reconsideration of plaintiff's RFC, including proper analysis of the weight to be given Dr. Cheng's residual functional capacity questionnaire consistent with the treating source regulation. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Wilson*, 378 F.3d at 546.

### 3. The ALJ erred in assessing plaintiff's physical RFC.

The ALJ determined that plaintiff has the RFC to perform light work. Specifically, the ALJ found that plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; he can stand and/or walk for six hours in an eight-hour workday; and he has limitations on certain postural activities, including reaching above shoulder level. (Tr. 20).

Plaintiff contends the ALJ erred in assessing his physical RFC by ignoring the RFC opinion of Dr. Mitchell Simons, plaintiff's treating pain specialist; by improperly devising his own RFC; and by failing to adequately explain his RFC finding in accordance with Social Security Ruling 96-8p. In support of his argument that the ALJ failed to give proper weight to the RFC opinion of Dr. Simons, plaintiff cites to Dr. Simons' diagnoses of lumbar spondylosis, facet arthropathy, bipolar disorder, and L5-S1 protruding disc; Dr. Simons' findings on clinical examination; and Dr. Simons' progress note stating that plaintiff's "functional parameters are severely impaired." (Doc. 9 at 10-11, and citations therein). Plaintiff argues that the ALJ should

19

have contacted Dr. Simons for clarification and/or explanation if he felt the RFC from Dr. Simons was not consistent with his treatment notes.

The ALJ did not err in assessing Dr. Simons' opinions in this case. Notably, Dr. Simons never gave an opinion on plaintiff's functional capacity. While he completed a "Basic Medical" form listing diagnoses of low back arthritis and facet joint disease, Dr. Simons declined to identify any specific functional limitations, stating that his office did not provide functional capacity evaluations. (Tr. 475-76). Therefore, there was no RFC opinion for the ALJ to ignore or clarify as plaintiff contends. To the extent Dr. Simons opined that plaintiff was "unemployable" and had been unable to work for the last ten years (Tr. 475-76), the ALJ was not required to give deference to the treating doctor's conclusion of disability. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Warner,* 375 F.3d at 390.

Nevertheless, the Court is unable to discern from the ALJ's opinion how he arrived at the physical RFC decision and what evidence the ALJ relied on in making that decision. The ALJ failed to articulate the basis for his RFC opinion and to link his RFC determination with specific evidence in the record in accordance with Social Security Ruling 96-8p. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96-8p (1996).

In this case, the record is devoid of any physician opinions on plaintiff's physical functional capacity or limitations. As the ALJ acknowledged, there was no physical RFC from a State agency medical consultant. (Tr. 24). There are no reports from any consultative physicians assessing plaintiff's functional capacity or limitations. Nor did the ALJ engage the services of a

medical advisor at the hearing. Therefore, there is no medical opinion on plaintiff's functional limitations. Plaintiff's severe impairments of lumbar facet arthropathy and spondylolisthesis at L5-S1 do not translate automatically into clearly definable exertional restrictions, much less denote an ability to perform a range of light work activity. Significantly, the ALJ's decision fails to include a narrative explanation describing how the medical evidence of record supports the specific exertional limitations set forth in the ALJ's RFC finding. *See* SSR 96–8p.[8] Although the ALJ did discuss plaintiff's statements of limitations as well as the medical evidence related to plaintiff's back impairment and treatment therefor (Tr. 21-24), the ALJ failed to take the next step and explain how such evidence signified an ability to perform light work. Simply listing the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the functional limitations ultimately imposed in the RFC is insufficient to meet the "narrative discussion" requirement of SSR 96-8.

The ALJ's decision reflects that he considered plaintiff's statements regarding his symptoms and alleged limitations in assessing plaintiff's RFC. However, the ALJ's decision in this respect lacks any explanation that would allow this Court to understand the weight the ALJ actually gave to plaintiff's statements in determining his RFC. The ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to produce the

---

[8]Social Security Ruling (SSR) 96–8p provides in relevant part:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

alleged symptoms," but plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21). The Court simply cannot discern to what extent plaintiff's "credible" statements were accepted or rejected by the ALJ in devising the RFC decision.

The Court recognizes that it is the ALJ's responsibility to formulate the RFC. *See* 20 C.F.R. § 404.1546(c). *See also* 20 C.F.R. § 404.1527(e)(2) (the final responsibility for deciding RFC is reserved to the Commissioner even though "we consider opinions from medical sources on issues such as . . . your residual functional capacity"). Yet, in rendering the RFC decision, it is incumbent upon the ALJ to give some indication of the specific evidence relied upon and the findings associated with the particular RFC limitations to enable this Court to perform a meaningful judicial review of that decision. Otherwise, the Court is left to speculate on the method utilized and evidence relied upon by the ALJ in arriving at his RFC determination. Based on the state of the current record and the ALJ's decision, the Court is unable to discern the underlying basis for the ALJ's conclusion that plaintiff retains the functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally, to stand and/or walk for six hours in an eight-hour work day, and to perform the other postural functions listed in the RFC. (Tr. 20). The ALJ was required to cite some substantial medical and other evidence in the record to support his findings on plaintiff's ability to lift, carry, sit, stand, and walk, and not fashion an RFC out of whole cloth. For these reasons, the Court finds that the ALJ's RFC determination is not supported by substantial evidence and should be reversed.

**E. This matter should be reversed and remanded for further proceedings.**

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for reconsideration of plaintiff's RFC and the weight to afford plaintiff's treating physicians consistent with this Report and Recommendation.

## IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 11/10/2011

Karen L. Litkovitz
United States Magistrate Judge

CHRISTOPHER STEADMAN,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-801
Beckwith, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

24