IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Christopher Steadman,      )
                           )
         Plaintiff,        )  Case No. 1:10-CV-801
                           )
    vs.                    )
                           )
Michael J. Astrue,         )
Commissioner of Social     )
Security,                  )
                           )
         Defendant.        )

O R D E R

This matter is before the Court on Magistrate Judge
Litkovitz's Report and Recommendation of November 14, 2011 (Doc.
No. 16) and the Commissioner of Social Security's objections to
the Report and Recommendation (Doc. No. 27).  In her Report and
Recommendation, Magistrate Judge Litkovitz concluded that the
Administrative Law Judge's ("ALJ's") determination that Plaintiff
is not disabled under the Social Security regulations, and
therefore is not entitled to receive disability insurance
benefits and supplemental security income, was not supported by
substantial evidence.  Specifically, Judge Litkovitz concluded
that the ALJ's decision to afford little weight to the opinion of
Plaintiff's treating psychiatrist was not supported by
substantial evidence for a number of reasons.  Judge Litkovitz
also determined that the physical residual functional capacity
("RFC") adopted by the ALJ was not supported by substantial
evidence because he failed to specify the evidence he relied on

in arriving at the RFC.  Therefore, Judge Litkovitz recommended
that the ALJ's decision be reversed and remanded for further
proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).  The
Commissioner filed timely objections to the Report and
Recommendation.  For the reasons that follow, the Commissioner's
objection to Judge Litkovitz's determination that the physical
RFC adopted by the ALJ was not supported by substantial evidence
is well-taken and is **SUSTAINED.**  The Commissioner's objections to
Judge Litkovitz's determination that the ALJ's decision to give
little weight to the opinion of Plaintiff's treating psychiatrist
was not supported by substantial evidence is not well-taken and
is **OVERRULED.**  The Court, therefore, **ADOPTS** the Report and
Recommendation in part.  The decision of the ALJ finding that
Plaintiff is not disabled under the Social Security regulations
is **REVERSED** and this case is **REMANDED** for further proceedings
consistent with this order pursuant to Sentence Four of 42 U.S.C.
§ 405(g).

## I. Background

Plaintiff Christopher Steadman filed a claim for
supplemental security income and disability insurance benefits
based on the impairments of chronic cysts, abdominal hernia, and
bipolar disorder.  Tr. 148.  During the administrative process,
however, the focus of Plaintiff's alleged physical impairments
shifted from chronic cysts and an abdominal hernia to back pain

resulting lumbar facet arthropathy, i.e., arthritis.[1]  Plaintiff
was age 38 at the alleged onset date of disability.  Plaintiff's
past relevant work was as a construction worker, a semi-skilled
position typically performed at the heavy level of exertion.  Tr.
54.  Magistrate Judge Litkovitz thoroughly reviewed the medical
evidence in her Report and Recommendation.  Inasmuch as the
Commissioner's objections concern only the ALJ's treatment of the
opinion of Dr. Carlos Cheng, Plaintiff's treating psychiatrist,
and Plaintiff's physical RFC, the Court will limit its discussion
of the medical evidence to these two issues.

## A. Plaintiff's Mental RFC

Plaintiff began receiving treatment for bipolar
disorder and panic attacks from Talbert House/Core Behavioral
Center in late February/early March 2007.  Plaintiff initially
appeared complaining of panic attacks, migraine headaches,
trouble remembering things, and difficulty concentrating and
staying focused.  Tr. 286.  Generally speaking, Plaintiff
indicated that he was losing control of himself.  He appeared
unkempt, with a worried expression, fragmented and impoverished
thoughts, and depressed mood and affect.  Id.  The initial
diagnosis was bipolar disorder and anxiety disorder.  Tr. 291.
Plaintiff was assigned a Global Assessment of Functioning ("GAF")

---

[1]    Sandoval v. Barnhart, 209 Fed. Appx. 820, 824 n.2 (10th
Cir. 2006).

score of 50, which indicates serious symptoms and serious impairments in maintaining social, occupational, or school functioning.[2]  Tr. 291.

     In a follow-up visit on April 24, 2007, Plaintiff reported feeling "almost immediately better" after starting on a prescription for Symbyax, which is indicated for treatment of depression associated with bipolar disorder.[3]  Tr. 316. Plaintiff's symptoms returned, however, as did disturbing thoughts.  The progress note states, however, that Plaintiff looked better overall, was more calm, and his thoughts were more fluent and logical.  Id.  The assessment was partial improvement and a plan to increase the dosage of Symbyax.  Tr. 317.

     By the next appointment on May 8, 2007, the progress notes state that Plaintiff was "better on higher dose of Symbyax."  Tr. 314.  Plaintiff reported being calmer, with better sleep, fewer headaches, agitation, and anxiety.  Id.  Plaintiff looked calmer and his thoughts were more logical and speech more fluent.  Tr. 314.  He was reported as improving and becoming more functional at home, such as doing housework and working on his car.  Tr. 315.

---

     [2]    DeBoard v. Commissioner of Social Sec., 211 Fed. Appx. 411, 415 (6th Cir. 2006).

     [3]    Long v. Astrue, No. 3:10-0273, 2011 WL 1258407, at *1 n.3 (M.D.Tenn. March 07, 2011).

At the next follow-up, on May 28, 2007, Plaintiff showed continued improvement but complained of worsening panic attacks. Tr. 312.  He still appeared calmer and less depressed nevertheless and his thoughts were more logical.  Id.  The main problem at that point, the office note states, was panic attacks. Tr. 313.  Plaintiff was started on a prescription for Clonazepam to treat his panic attacks.[4]  Id.

On the next follow-up, on June 26, 2007, Plaintiff reported improvement on many if not most symptoms, except for his panic attacks, which Clonazepam did not help.  Tr. 310. Plaintiff was started on Valium for panic attacks instead.  Tr. 311.

By the July 24, 2007 follow-up, Plaintiff had a relapse of symptoms because he had been jailed for non-payment of child support and was not able to take the Symbyax.  Tr. 308.  He was disheveled and anxious, but had some improvement once he was able to restart Symbyax.  Id.

In summary, this series of treatment notes indicates an overall improvement in Plaintiff's bipolar disorder on Symbyax, although he was still experiencing panic attacks.  There is a gap in the progress notes between July 2007 and September 2008, when

---

[4]    Dee v. Commissioner of Social Sec., No. 3:10-CV-1487, 2011 WL 4072299, at *6 (N.D. Ohio Sept. 7, 2011).

Plaintiff began treatment with Dr. Carlos Cheng at Centerpoint Health/Talbert House.

In the initial assessment form with Dr. Cheng, Plaintiff was still diagnosed with bipolar disorder and anxiety disorder, but with a GAF of 60, indicating only moderate symptoms and moderate impairments in social, occupational, or school functioning.[5] Tr. 389. Plaintiff also stated that he wanted to discontinue counseling because he had reached his desired goals, but wanted to continue his medications. Tr. 386.

In his October 15, 2008 follow-up, Dr. Cheng recorded that Plaintiff reported "full remission for clinically affective/hypermanic" symptoms and that he denied relapsing into panicky feelings or episodes. Tr. 421. Plaintiff was to continue with psychotherapy and his medication regimen. Tr. 422.

In February 2009, Plaintiff presented in a "moderately clinically depressive mood." Tr. 419. The plan was to continue with psychotherapy and his medication regimen. Tr. 420.

In April 2009, Plaintiff reported that his medications were working well. Tr. 451. His GAF was still 60, however. Tr. 453. In May 2009, Plaintiff presented at his baseline "without relapse [to] clinical affective debility/hypermanic/vegetative" symptoms. Tr. 449. Again, the plan was to continue with

---

[5] <u>Kennedy v. Astrue</u>, 247 Fed. Appx. 761, 766 (6th Cir. 2007).

6

psychotherapy and medications.  Tr. 450.  In July 2009, Plaintiff
again presented at his baseline and "denied experiencing clinical
affective debility or hypermanic/vegetative" episodes."  Tr. 485.
The follow-up plan remained the same.  Tr. 486.

Dr. Cheng provided two mental RFC assessments.

In October 2008, Dr. Cheng indicated that Plaintiff is
not significantly limited in his abilities to understand and
remember very short and simple instructions, carry out very short
and simple instructions, interact appropriately with the general
public, ask simple questions or request assistance, maintain
socially acceptable behavior and adhere to basic standards of
neatness and cleanliness, and be aware of normal hazards and take
precautions.  Tr. 477.  Plaintiff is not significantly limited in
the abilities to remember locations and work-like procedures,
understand and remember detailed instructions, carry out detailed
instructions, maintain attention and concentration for extended
periods, sustain an ordinary routine without special supervision,
make simple work-related decisions, accept instructions and
respond appropriately to criticism from supervisors, get along
with coworkers and peers without distracting them or exhibiting
behavioral extremes, and travel in unfamiliar places or use
public transportation.  Id.  Finally, according to this RFC,
Plaintiff is markedly limited in the abilities to perform
activities within a schedule, maintain regular attendance, and be

punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, and set realistic goals and make plans independently of others. Id. Dr. Cheng indicated that these limitations were likely to last from 30 days to 9 months. Id. He also indicated that Plaintiff is unemployable. Id.

In July 2009, Dr. Cheng completed another mental RFC evaluation form. Tr. 478-483. This form has individual sections to rate the claimant's mental abilities to perform skilled, semiskilled, and unskilled work. It also has a section to rate the claimant's mental abilities to interact with others and a section to rate the claimant's functional limitations. For unskilled work, Dr. Cheng indicated that Plaintiff would have no limitations in asking questions, accepting instructions and responding appropriately to criticism from supervisors, and being aware of normal hazards and taking precautions. Dr. Cheng stated that Plaintiff would be limited, but satisfactory, in the abilities to remember work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, working in coordination with or

proximity to others without becoming unduly distracted, making simple work-related decisions, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and responding appropriately to changes in a routine work setting. Finally, Dr. Cheng indicated that Plaintiff would be seriously limited, but not precluded, in the abilities to maintain attention for a two hour segment, maintaining attendance and being punctual within customary, usually strict tolerances, sustaining an ordinary work routine without special supervision, completing a normal workday and workweek without interruptions from psychologically-based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and dealing with work stress. Tr. 480. With regard to skilled and semi-skilled work, Dr. Cheng added that Plaintiff would be limited but satisfactory in the ability to set realistic goals and make plans independently of others and that he would be seriously limited but not precluded in the abilities to understand and remember detailed instructions, carrying out detailed instructions, and dealing with the stress of semi-skilled and skilled work. Id.

Dr. Cheng then indicated that Plaintiff would be unlimited in the abilities to maintain socially appropriate behavior and using public transportation. He stated that Plaintiff would be limited but satisfactory in the abilities to

interact with the public, adhere to basic standards of neatness and cleanliness, and travel in unfamiliar places.  Tr. 480.

Finally, with regard to functional limitations, Dr. Cheng indicated that Plaintiff has no or only mild restrictions in activities of daily living and that he is moderately limited in maintaining social functioning and maintaining concentration, persistence, and pace.  Dr. Cheng stated that Plaintiff had three episodes of decompensation in the previous 12 months, each lasting at least two weeks in duration.  Tr. 481.  Dr. Cheng opined that Plaintiff would miss four days of work per month due to his mental impairments.  Tr. 483.

In June 2007, a state agency reviewing psychologist, Dr. Vicki Casterline, provided a mental residual functional capacity assessment form in which she indicated that Plaintiff has no or only moderate limitations in all areas.  Tr. 326-328. Dr. Casterline stated that Plaintiff would be able to tolerate routine changes in work duties, but would have difficulty with the stress of frequent changes in job duties.  She stated that Plaintiff can relate adequately and follow instructions.  Tr. 328.

### B. <u>Plaintiff's Physical RFC</u>

Plaintiff received treatment for back pain from Dr. Mitchell Simons from July 2008 to July 2009.  Dr. Simons diagnosed Plaintiff with lumbar spondylolisthesis, lumbar facet

10

arthropathy, bipolar disorder, depression, and protruding discs at L5 and S1.  Tr. 407.  Dr. Simons's progress notes indicate that Plaintiff typically complained of back pain rating anywhere from 8 to 10 on a scale of 10 but that his medication - usually Percocet - provided 70% to 90% relief.  Tr. 407, 408, 405, 406, 400, 401, 395, 396, 393, 394, 391, 392, 458, 472.  Plaintiff also indicated to Dr. Simons that he did not have any side effects with his medications.  Tr. 406, 401, 396, 394, 392.

In December 2008, Plaintiff had a left lumbar transforaminal epidural injection which reduced his pain from 9 to 3.  Tr. 402.  A month later, Plaintiff reported that he felt good initial results from this procedure.  Tr. 400.  Plaintiff had a right lumbar transforaminal epidural injection in January 2009 which initially reduced his pain from 9 to 3.  Tr. 397.  In the follow-up examination a couple of weeks later, however, Plaintiff reported that he received no relief from this procedure.  Tr. 395.  Plaintiff reported his pain at 10 with medication providing only 40% relief.  Id.  In another follow-up a week later, however, while Plaintiff reported his pain at 10, he stated that medication was providing 80% relief.  Tr. 393.  Plaintiff also had a lumbar facet injection in May 2009 which reduced his pain from 8 to 3.

In October 2008, Dr. Simons completed a form entitled "Basic Medical" in which he indicated that Plaintiff has

11

diagnoses of lumbar spondylolisthesis, facet arthropathy, lumbar pain, and bipolar affective disorder.  Tr. 475.  Dr. Simons, however, declined to provide a functional capacity evaluation for Plaintiff.  Tr. 476.

The ALJ did not otherwise obtain a functional capacity evaluation from a state agency consultative examiner or a state agency file reviewer.

### C.  The ALJ's Decision

Plaintiff's application for benefits was denied initially and upon reconsideration.  Plaintiff requested and received an evidentiary hearing before an ALJ.  The hearing was held on August 3, 2009.  Plaintiff testified during the hearing, as did a vocational expert.  The ALJ's evaluation of Plaintiff's credibility is not before the Court so his testimony need not be summarized here.

The ALJ asked the vocational expert to assume the following hypothetical person: right hand dominate with the education and work experience of Plaintiff; he can lift and carry up to 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for 6 hours in an 8 hour day; he can only occasionally stoop, kneel, crouch, and climb ramps or stairs; he cannot crawl or climb ladders, ropes or scaffolds or work around unprotected heights or around hazardous machinery; he can only occasionally reach above shoulder level with the upper

extremities; he can perform only simple, routine, repetitive tasks, and understand remember and carry out short and simple instructions; he cannot interact with the general public; he can only occasionally interact with coworkers and supervisors; he cannot work in jobs with rapid production rates and can have no more than routine changes in work setting or duties; he can only make simple work-related decisions.  Tr. 54-55.  The vocational expert testified that this hypothetical person could not perform Plaintiff's past relevant work, but he could perform a number of light unskilled jobs that exist in significant numbers in the national economy, such as machine tender and packager.  Tr. 55. This person would also be able to perform sedentary jobs, such as inspector, sorter, and weight tester.  Tr. 56.  If the hypothetical person needed to miss three days of work per month, the vocational expert testified that all jobs would be eliminated.  Tr. 56-57.  On cross-examination by Plaintiff's attorney, the vocational expert testified that if the hypothetical person can only maintain concentration for 2 hours in an 8 hour day, all work would be eliminated.  Tr. 57.

The ALJ issued a decision denying Plaintiff's application for disability insurance benefits and supplemental security income on August 21, 2009.  Tr. 15-26.  As is relevant here, the ALJ gave "little weight" to the mental RFC assessments provided by Dr. Cheng on several grounds.  With respect to the

13

first RFC, the ALJ commented that the form failed to define the terms "markedly limited" and "moderately limited." Tr. 24. The ALJ also stated that Dr. Cheng indicated that Plaintiff's symptoms were likely to last no more than nine months. Id. The ALJ stated that Dr. Cheng's second mental RFC assessment was not supported and that the limitations indicated in the form were not supported by medical signs or findings upon examination as indicated by his Centerpoint progress notes. Id. Instead, in arriving at Plaintiff's mental RFC, the ALJ relied on the Dr. Casterline's opinion indicating that Plaintiff has only moderate impairments at worst. Id.

      With regard to Plaintiff's physical RFC, the ALJ first gave Plaintiff "the full benefit of the doubt" that his lumbar facet arthropathy is a severe impairment. Tr. 18. The ALJ noted later that Dr. Simons refused to provide a functional capacity assessment. Tr. 24. The ALJ also rejected Plaintiff's subjective complaints concerning the limiting effects of his back pain due to lack of supporting objective medical evidence and because of inconsistencies in his testimony. Tr. 21-23. The ALJ noted that Dr. Simons's treatment notes indicate that Plaintiff received 90% relief with pain medication and, further, that he reported having an excellent quality of life. Tr. 21-22.

      The ALJ thus determined that Plaintiff has the mental and physical RFC of the hypothetical person posited to the

vocational expert during the evidentiary hearing.  Tr. 20.  The
ALJ subsequently relied on the vocational expert's testimony at
the fifth step of the sequential evaluation process and found
that Plaintiff is not disabled because he has the RFC to perform
a significant number of jobs available in the national economy.
Tr. 25-26.

### D. <u>District Court Proceedings</u>

The Appeals Council denied Plaintiff's request to
review the ALJ's decision, making the ALJ's decision the final
decision of the Commissioner of Social Security.  Tr. 1-3.
Plaintiff then filed a timely complaint with this Court to review
the ALJ's decision.  Plaintiff raised two assignments of error in
his Statement of Specific Errors.  First, Plaintiff argued that
the ALJ erred by not giving sufficient weight to the opinions of
Dr. Cheng and Dr. Simons.  Second, Plaintiff argued that the ALJ
erred by not adequately explaining his RFC findings.  Doc. No. 9.

In her Report and Recommendation, Magistrate Judge
Litkovitz concluded that the ALJ erred in the weight he gave to
Dr. Cheng's opinions concerning Plaintiff's mental RFC and that
he did not give good reasons for rejecting Dr. Cheng's opinions.
Specifically, Judge Litkovitz noted that the ALJ accepted the
state agency psychologist's RFC form even though it did not
define the terms "markedly limited" and "moderately limited."

Therefore, the ALJ was without a basis for rejecting Dr. Cheng's first opinion for failing to define these terms.

Second, Judge Litkovitz noted that while Dr. Cheng's first RFC indicated that Plaintiff's mental impairments were expected to last only nine months, the ALJ ignored the second one which stated that they were expected to last more than twelve months.

Third, Judge Litkovitz concluded that the ALJ failed to point out any inconsistencies between Dr. Cheng's opinions and his progress or treatment notes.

Fourth, Judge Litkovitz concluded that Dr. Cheng's opinions were supported by objective clinical findings. Specifically, Judge Litkovitz noted the 2009 assessment, which included findings such as feelings of guilt or worthlessness, severe panic attacks and sleep disturbances, and the progress notes which indicated disheveled appearance, worried expression, impoverished stream of thought, depressed affect and panic attacks.

Fifth, Judge Litkovitz conclude that the ALJ's decision failed to adequately address all of the regulatory factors in assessing Dr. Cheng's opinion and, thus, it was impossible for the Court to meaningful review the decision.

With respect to Plaintiff's physical RFC, Judge Litkovitz determined that the ALJ did not err in assessing Dr.

Simons's opinions, noting specifically that he refused to provide a physical RFC evaluation and that the ALJ was not required to give any weight to his conclusory opinion that Plaintiff is unemployable. Judge Litkovitz determined nevertheless that the ALJ's determination that Plaintiff can perform a limited range of light work was not supported by substantial evidence. Judge Litkovitz noted that there are no medical source opinions on Plaintiff's physical RFC. Judge Litkovitz determined that the ALJ failed to link the medical evidence to his conclusion that Plaintiff can perform a limited range of light work. Judge Litkovitz concluded that the ALJ did not sufficiently explain the basis for the physical RFC he adopted such that the Court can meaningfully review it.

Judge Litkovitz recommended, therefore, that the ALJ's decision be reversed and the case remanded to the ALJ to reconsider Plaintiff's RFC and the weight to be assigned to Dr. Cheng's opinions pursuant to Sentence Four of 42 U.S.C. § 405(g).

The Commissioner filed timely objections to Judge Litkovitz's Report and Recommendation which are now ready for disposition.

## II. <u>Standard of Review</u>

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. <u>See</u> 42 U.S.C. § 405(g). The Court is to determine only whether the

17

record as a whole contains substantial evidence to support the ALJ's decision.  "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Sec'y of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  Id.  Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury.  Id.  If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence.  Elkins v. Sec'y of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981).  The district court reviews de novo a magistrate judge's report and recommendation regarding social security benefits claims.  Ivy v. Sec'y of Health &  Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

### III. Analysis

#### A. The Treating Physician Rule

The first aspect of Plaintiff's assignments of error and the Report and Recommendation concern the treating physician rule.  Under the treating physician rule, opinions of physicians who have treated the claimant receive controlling weight if they

are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If the ALJ finds that either of these criteria have not been satisfied, he is required to apply the following factors in determining how much weight to give a treating physician's opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."  Wilson v. Commissioner of Social Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The ALJ must give "good reasons" for rejecting the opinion of a treating physician.  The ALJ's failure to comply with the "good reasons" rule is a procedural error which generally requires reversal even if the record otherwise supports the ALJ's determination.  Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242-43 (6th Cir. 2007); see also Rabbers v. Commissioner Social Sec. Admin., 582 F.3d. 647, 656 (6th Cir. 2009) (noting that the Wilson opinion left open the possibility that a de minimis violation of the "good reasons" rule can be a harmless error).  The ALJ, however, is not required to give any weight to the conclusory opinions of treating physicians that the claimant is unable to work, since that determination is reserved for the Commissioner.  Vance v.

Commissioner of Social Sec., 260 Fed. Appx. 801, 804 (6th Cir. 2008).

In his objections, the Commissioner argues that in concluding that the ALJ gave insufficient weight to Dr. Cheng's opinions, the Magistrate Judge failed to note that the ALJ accommodated Plaintiff's mental impairments by restricting him to short and simple instructions, routine and repetitive tasks, no interaction with the public and only limited interaction with coworkers and the public. The Commissioner argues that these limitations are not undermined by Dr. Cheng's opinion that Plaintiff has no limitations in activities of daily living and only moderate limitations in social functioning and concentration, persistence, and pace. The Commissioner also argues that the ALJ's determination that Dr. Cheng's opinions were not supported by the record was supported by substantial evidence. The Commissioner notes that there is no evidence that Plaintiff had three or more episodes of decompensation. The Commissioner also observes that Dr. Cheng's assignment of a GAF score of 60 indicates only moderate mental limitations and is borderline to having only mild mental limitations.

The Court agrees with the Commissioner that there are inconsistencies between Dr. Cheng's opinions and his treatment notes. The Court's review of Dr. Cheng's progress notes indicate that overall, Plaintiff's bipolar disorder showed substantial

improvement.  By April 2009, Plaintiff reported that his medications were working well.  Tr. 451.  His GAF was 60.  Tr. 453.  In May 2009, Dr. Cheng recorded that Plaintiff presented at his baseline "without relapse [to] clinical affective debility/hypermanic/vegetative" symptoms.  Tr. 485.  These findings seem to be inconsistent with Dr. Cheng's findings just two months later that Plaintiff is seriously limited in his abilities to maintain attendance and sustain an ordinary work routine.  There are also internal inconsistencies in Dr. Cheng's July 2009 opinion.  For instance, on page 3 Dr. Cheng indicated that Plaintiff is seriously limited in his abilities to maintain attention for a two hour period and to perform at a consistent pace, but on page 4 Dr. Cheng indicated that Plaintiff only has moderate limitations in concentration, persistence, and pace.  Tr. 480-81.  Therefore, there is support in the record for the ALJ's determination that Dr. Cheng's opinions are not supported by the record evidence.

Despite the support for not giving Dr. Cheng's opinions controlling weight, the Court agrees with Magistrate Judge Litkovitz that the ALJ failed to take the next step and discuss the factors discussed in Wilson for weighing Dr. Cheng's opinion.  Dr. Cheng's opinions as a treating physician were entitled to great deference even if they were not entitled to controlling weight.  Rogers, 486 F.3d at 242.  The ALJ's decision to give Dr.

21

Cheng's opinions little weight without discussing the factors set forth in <u>Wilson</u> means that his decision was not supported by substantial evidence.  Judge Litkovitz also was correct in concluding that the ALJ's decision fails to satisfy the requirement to give "good reasons" for rejecting Dr. Cheng's opinions for more or less the same reasons.  Therefore, the weight the ALJ gave to Dr. Cheng's opinion is not supported by substantial evidence.

Accordingly, this objection is not well-taken and is **OVERRULED.**

### B. <u>Plaintiff's Physical RFC</u>

As indicated, the ALJ determined that Plaintiff has the physical RFC to perform a limited range of light work.  Judge Litkovitz's Report and Recommendation seems to indicate that the ALJ was required to obtain a medical source opinion in developing Plaintiff's physical RFC.  It is well-established, however, that the claimant bears the burden of proving his RFC.  <u>Her v. Commissioner of Social Sec.</u>, 203 F.3d 388, 391 (6th Cir. 1999).  If the claimant fails to obtain an official RFC, and relies on other evidence to prove his impairments, the Commissioner is not required to prove his RFC at the fifth step.  <u>Id.</u>

In this case, Plaintiff failed to obtain a physical RFC assessment from any of his treating physicians.  He, therefore, had to rely on other evidence in the record to establish his RFC.

22

The ALJ rejected Plaintiff's subjective complaints of pain and the limitations he claimed they imposed on his ability to work, a determination not before the Court.  As the ALJ indicated in his opinion, Dr. Simons's progress notes reflect that pain medication gives Plaintiff nearly complete relief without any side effects. Thus, there was little or no evidence that Plaintiff's lumbar arthropathy limits his ability to work.  Rather than fashioning Plaintiff's physical RFC out of whole cloth, as Judge Litkovitz argued the ALJ did, the Commissioner more accurately argues that the ALJ gave Plaintiff the benefit of the doubt in finding that his lumbar arthropathy is a severe impairment.  Given the lack of evidence supporting a claim of disabling back pain, the ALJ arguably would have been justified in concluding that Plaintiff has no exertional limitations.  The ALJ nevertheless  reasonably restricted Plaintiff to a limited range of light work, a decision which is fully supported by the record.

Accordingly, this objection is well-taken and is **SUSTAINED.**

Conclusion

In conclusion, the Commissioner's objections to Judge Litkovitz's Report and Recommendation are **SUSTAINED IN PART AND OVERRULED IN PART.**  The Commissioner's objections to Judge Litkovitz's determination that the physical RFC adopted by the ALJ was not supported by substantial evidence is well-taken and

23

is **SUSTAINED.**  The Commissioner's objections to Judge Litkovitz's determination that the ALJ's decision to give little weight to the opinion of Plaintiff's treating psychiatrist was not supported by substantial evidence is not well-taken and is **OVERRULED.**  The Court, therefore, **ADOPTS** the Report and Recommendation in part.  The decision of the ALJ finding that Plaintiff is not disabled under the Social Security regulations is **REVERSED** and this case is **REMANDED** to the ALJ pursuant to Sentence Four of 42 U.S.C. § 405(g) to reconsider the weight to be given to Dr. Cheng's opinion.

        **IT IS SO ORDERED**

Date December 21, 2011            s/Sandra S. Beckwith
                              Sandra S. Beckwith
                Senior United States District Judge